UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MATTHEW GOODSON, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 3:19-cv-00142-JRG-SKL |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Matthew Goodson ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB") and

supplemental security income ("SSI"). Each party moved for summary judgment [Docs. 17 & 21],

and filed supporting briefs [Docs. 18 & 22]. This matter is now ripe, and for the reasons stated

below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 17] be

**DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 21] be **GRANTED**; and

(3) the decision of the Commissioner be **AFFIRMED**.

## I.     ADMINISTRATIVE PROCEEDINGS

As reflected in the transcript of the administrative proceedings [Doc. 11 ("Tr.")], Plaintiff

filed an application for DIB and SSI in August 2015, alleging disability beginning January 1, 2013.

Plaintiff's claims were denied initially and on reconsideration. A hearing on Plaintiff's claims was

held before an administrative law judge ("ALJ") on February 28, 2018. On June 22, 2018, the

ALJ issued an unfavorable decision, finding that Plaintiff was not under a "disability" as defined

in the Social Security Act (the "Act").  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Plaintiff timely filed the instant action.

## II.  FACTUAL BACKGROUND

### A.  Education and Employment Background

Plaintiff was born on April 9, 1981, making him a "younger individual age 18-49" on the alleged disability onset date (Tr. 20).  He has at least a high school education and is able to communicate in English.  He has past relevant work as a fast food cook, a window installer, a waiter, and pizza delivery driver.  These occupations are classified in the Dictionary of Occupational Titles ("DOT")[1] as either light or medium exertional levels, and range from unskilled to skilled.

### B.  Medical Records

Plaintiff alleges disability due to "Anxiety, depression," and "Back problems (Recent injury from fall)." (Tr. 70).  While there is no need to summarize the medical records herein, the relevant records have been reviewed.

### C.  Hearing Testimony

At the hearing before the ALJ on February 28, 2018, Plaintiff and a vocational expert ("VE") testified.  Plaintiff was represented by counsel at the hearing.  The Court has carefully reviewed the transcript of the hearing.

---

[1] *Available at*: https://www.oalj.dol.gov/LIBDOT.HTM.

2

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

3

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through December 31, 2017. At step one of the process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 1, 2013. At step two, the ALJ found Plaintiff had the following medically determinable impairments: (1) degenerative disc disease, (2) migraine headaches, (3) affective disorder, and (4) anxiety disorder. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next the ALJ found Plaintiff had the following residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with these additional restrictions:

- He can only occasionally climb ladders, ropes, or scaffolds.

- He can only occasionally stoop or crawl.

- He can frequently climb ramps or stairs.

- He can frequently kneel or crouch.

- He can have only occasional contact with other workers.

- He cannot have any contact with the general public.

- He can adapt only to infrequent changes in the workplaces.

4

- He will be absent up to ten times per year.

(Tr. 17).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. At step five, however, the ALJ found Plaintiff was able to perform other work existing in significant numbers in the national economy, including as a "marker," an "assembler," and a "garment sorter" (Tr. 21). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the alleged onset date through the date of the ALJ's decision.

## IV.    ANALYSIS

Plaintiff asserts this matter should be reversed and remanded for further consideration of his claim, because the ALJ failed to properly assess his RFC. Specifically, Plaintiff argues the ALJ erred in evaluating the medical opinion evidence from Plaintiff's treating psychologist and from the state Disability Determination Services nonexamining psychological consultants.

Plaintiff also argues the ALJ "ignored substantial portions of [Plaintiff's] treating records," thereby cherry-picking evidence in favor of denying benefits [Doc. 18 at Page ID # 987]. Finally, Plaintiff contends the ALJ failed to comply with Social Security Ruling ("SSR") 96-8p, because SSR 96-8p requires the ALJ to include a "narrative discussion" of how the evidence supports the ALJ's conclusion; Plaintiff contends in this case the ALJ's RFC assessment is "conclusory and does not contain any rationale or reference to the supporting evidence." [*Id.* at Page ID # 991].

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning

5

of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833.  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported

in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

B.     **RFC**

A claimant's RFC is the most the claimant can do despite his or her impairments.  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(2).  In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other."  *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (quotation marks and citation omitted).  An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record, including the medical opinion evidence.  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

1.     **The ALJ's Assessment of the Medical Opinion Evidence**

Plaintiff first argues the ALJ erred in his consideration of some of the medical opinion evidence.  Specifically, Plaintiff challenges the ALJ's decision to assign "partial weight" to the opinions of Plaintiff's treating psychologist, John Neece, PhD, while assigning "great weight" to the opinions of the state Disability Determination Services ("DDS") nonexamining psychological consultants.

In considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight" to assign to medical opinions from treating sources,

7

examining sources, and nonexamining Disability Determination Services ("DDS") physician (or psychologist) consultants, who simply review a claimant's medical record. *See Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). The regulations establish a hierarchy for these opinions, with treating source opinions at the top, followed by the one-time consultative examiners, then the nonexamining DDS physicians.

A medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.[2] 20 C.F.R. §§ 404.1527; 416.927; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted). This is known as the "treating physician rule." When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citations omitted). The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376 (citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). If a treating source's opinion is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors set forth in the regulations, including the nature and length of

---

[2] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies.

8

the relationship, the specialization of the medical source, the consistency and supportability of the opinion, and other factors. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

The opinions of the nonexamining DDS psychological consultants are not entitled to "any special degree of deference." *Jagdeo v. Berryhill*, No. 3:17-CV-469-TWP-DCP, 2019 WL 1119363, at *10 (E.D. Tenn. Feb. 19, 2019) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)), report and recommendation adopted, 2019 WL 119642 (E.D. Tenn. Mar. 11, 2019); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274-75 (6th Cir. 2015) (opinions of consulting and nonexamining medical sources are not subject to the so-called "treating physician rule"). The ALJ must "evaluate" these opinions, and in doing so, must consider the relevant factors in 20 C.F.R. §§ 404.1527(c) & 416.927(c), the same factors used to analyze the opinion of a treating physician.

The SSA has instructed that opinions from DDS nonexamining consultants may be entitled to greater weight than the opinions of treating or examining sources "in appropriate circumstances, *e.g.*, where the treating source's opinion is not supported by the evidence." *Shoops v. Comm'r of Soc. Sec.*, No. 18-cv-10444, 2019 WL 2051902, at *9 (E.D. Mich. Feb. 14, 2019) (citations omitted), report and recommendation adopted in pertinent part, 2019 WL 1317164 (E.D. Mich. Mar. 29, 2019), appealed, No. 19-1586 (6th Cir. May 24, 2019).

In January 2016, after seeing Plaintiff for about 16 months, Dr. Neece opined that Plaintiff had an "adequate" memory, but "moderate" impairments in "concentration" and "social ability." (Tr. 564). He further wrote Plaintiff *could not*: (1) "remember and carry out simple, 1-2 step instructions and maintain a work routine without frequent breaks for stress related reasons" due to his anxiety; (2) "respond appropriately to normal stress and routine changes," because he had a tendency to overreact; or (3) "maintain a work schedule without missing frequently due to

9

psychological issues." (Tr 565). He wrote that Plaintiff *could*: (1) "maintain an ordinary work routine without inordinate supervision," (2) "maintain socially appropriate behavior, hygiene and grooming," and (3) "care for [him]self and maintain independent in daily living tasks." (Tr. 565). Dr. Neece gave another opinion in February 2018. In this second opinion, Dr. Neece found Plaintiff was (1) "not significantly limited" in his ability to "understand, remember, or apply information;" (2) "moderately limited" in his ability to "interact with others" and "adapt or manage" himself; and (3) "markedly limited" in his ability to "concentrate, persist, or maintain pace" (Tr. 890). In contrast to his earlier opinion that Plaintiff could maintain an ordinary work routine without inordinate supervision and maintain socially appropriate behavior, Dr. Neece found Plaintiff was "extremely limited" in his ability to ignore or avoid distractions while working, and was "moderately limited" in his ability to cooperate with others and in his ability to understand and respond to social cues (Tr. 887).

Regarding Dr. Neece's opinions, the ALJ wrote:

> In January 2016, the claimant's treating [psychologist] opined he had a moderately impaired ability to concentrate and socialize and would not be able to maintain a work schedule without frequently missing due to psychological issues (14F). In February 2018, the same [psychologist] opined the claimant moderately to extremely limited in his ability to interact with others and concentrate, persist or maintain pace (22F). The [psychologist] also opined the claimant met the "paragraph C" criteria discussed above (22F). The undersigned affords these opinions partial weight. Whether or not a claimant meets a listing is an administrative finding dispositive of a case and therefore, reserved to the Commissioner. Additionally, these opinions are inconsistent with each other and mental status examinations throughout the record documenting only an anxious, and depressed mood with some preoccupied paranoid thoughts, but were otherwise unremarkable (7F, 13F, 19F). Nonetheless, the undersigned has allowed ten absences per year in an environment with infrequent changes to account for the claimant's difficulty maintaining a work schedule.

(Tr. 19-20). Earlier in the opinion, the ALJ noted Plaintiff's treatment for his mental health conditions "has included medication and intermittent therapy including behavior methods to cope with anxiety, mindfulness and acceptance of stress today (7F; 19F)." (Tr. 19).

The DDS nonexamining psychologists offered their opinions in November 2015 and February 2016. Regarding their opinions, the ALJ wrote:

> The State agency psychological consultant[s] opined the claimant able to adapt to infrequent changes in the workplace, able to interact with others, and able to maintain concentration despite periods of increased signs and symptoms (1A; 2A; 7A; 8A). The undersigned affords these opinions great weight. The consultants are experts in Social Security policy and evidence standards. The opinions are supported by a thorough review of the medical records with additional evidence showing the claimant to be on a steady, stable course. They are consistent with the claimant's conservative course of treatment consisting of therapy and medication for psychiatric conditions . . . . (7F; . . . 19F).

(Tr. 19). Plaintiff argues the "ALJ's analysis of the medical opinions of this case is flawed for multiple reasons," each of which is addressed below [Doc. 18 at Page ID # 983].

### a.      Dr. Neece, treating psychologist

Plaintiff takes issue with the ALJ's findings that Dr. Neece's opinions are inconsistent with each other, and inconsistent with "mental status examinations throughout the record documenting only an anxious, depressed mood with some preoccupied paranoid thoughts," but which were "otherwise unremarkable." (Tr. 20). Plaintiff argues: "While it is true that [Plaintiff's] mental status examination 'only' consisted of anxious mood, the ALJ fails to consider the intensity and prolonged consistency of [Plaintiff's] anxiety. Not only does the record show that [Plaintiff] is constantly anxious, but the severity of his symptoms due to anxiety, which include paranoia, depression, and sleep paralysis, are also documented throughout the record." [Doc. 18 at Page ID # 983-84]. Plaintiff also argues the January 2016 and February 2018 opinions are not actually

inconsistent with each other, and that it was incorrect for the ALJ to reject Dr. Neece's opinion regarding the paragraph C criteria. Finally, Plaintiff argues the ALJ "provided no reasons for the weight given" to Dr. Neece's opinions, in contravention of the treating physician rule [*id.* at Page ID # 986].

First, as the Commissioner points out, the ALJ did not fail to consider "the intensity and prolonged consistency" of Plaintiff's anxiety [Doc. 22 at Page ID # 1010 (quoting Doc. 18 at Page ID # 983-84 (quotation marks omitted)] in evaluating Dr. Neece's opinion. The ALJ cited examples of Plaintiff's mental health treatment records, and accurately described the course of Plaintiff's treatment and Plaintiff's reported symptoms. Ultimately, the ALJ found Plaintiff suffered from anxiety and affective disorder, and that his mental health impairments were severe and caused him to have moderate limitations in his ability to interact with others and maintain concentration, persistence, or pace. True, the ALJ did not discuss every single mental health appointment Plaintiff attended over the years, but the ALJ was not required to. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) (ALJ's failure to discuss certain records "does not indicate they were not considered. An ALJ need not discuss every piece of evidence in the record for his decision to stand."). The ALJ presented an accurate picture of the notes from Plaintiff's appointments ranging from September 4, 2015 (Tr. 406-07) to January 9, 2018 (Tr. 836-37), which did show anxious and depressed moods and paranoid thoughts, but which also reflected many normal findings (i.e., were "otherwise unremarkable"), as the ALJ found.

Second, I am not persuaded the ALJ erred by reasoning that the two opinions were "inconsistent with each other" (Tr. 20). As discussed above, there are some unexplained

inconsistencies[3] between the two opinions, such as that Plaintiff could maintain a work routine without inordinate supervision and maintain socially appropriate behavior in January 2016, but was extremely limited in his ability to ignore or avoid distractions while working, and moderately limited in his ability to cooperate with others and understand/respond to social cues in February 2018.

I also find no error with the ALJ's rejection of Dr. Neece's "paragraph C" opinion. An individual can qualify as disabled by meeting certain criteria under a specific "listing" in the listing of impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listing 12.06 covers anxiety and obsessive-compulsive disorders, and an individual can qualify as disabled by meeting the criteria listed under paragraphs A and B, or under paragraphs A and C.

Dr. Neece checked boxes indicating Plaintiff met the paragraph C criteria for anxiety disorders, which require that: (1) the claimant has a serious and persistent disorder with a medically documented history over a period of at least two years; (2) the claimant has ongoing medical treatment, mental health therapy, psychosocial support, or a highly structured setting; and (3) the claimant has had only a marginal adjustment to the changing demands of everyday life. *See* 20

---

[3] Plaintiff submitted a letter from Dr. Neece, in which he purports to address the inconsistencies. The letter is dated July 20, 2018, and was therefore not part of the record when the ALJ rendered his decision. The Court may not consider new evidence that was not before the ALJ in determining whether to uphold, modify, or reverse the ALJ's decision. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 839 (6th Cir. 2016) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). Plaintiff does not address the standards for a remand under sentence six of 42 U.S.C. § 405(g), and I recommend the Court find the issue waived. Moreover, one requirement of sentence six is that the evidence be "new," that is, "'it cannot be cumulative of evidence already in the record.'" *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting *Elliott v. Apfel*, 28 F. App'x 420, 424 (6th Cir. 2002)). The July 2018 letter is plainly cumulative of the two earlier opinions and Dr. Neece's treatment notes. Moreover, the letter does not address what I perceive to be the relevant inconsistencies, as discussed herein.

C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06.[4]  As mentioned, the ALJ rejected that portion of Dr. Neece's February 2018 opinion, noting that "[w]hether or not a claimant meets a listing is an administrative finding dispositive of a case and therefore, reserved to the Commissioner." (Tr. 20). Plaintiff contends this was error on the part of the ALJ because the form Dr. Neece completed "does not directly ask the provider to identify if 'paragraph C' criteria [have] been met," but rather "the form outlines the narrative of 'paragraph C' and asks the provider to check-box 'yes' or 'no' if the claimant meets those assessments." [Doc. 18 at Page ID # 984].

  Neither party cited any cases on this issue, but I am not persuaded by Plaintiff's argument. For one, Plaintiff fails to present a developed argument that he qualifies as disabled at step three under listing 12.06; his entire brief is dedicated to arguments about his RFC.  *See Estate of Barnwell v. Grigsby*, No. 18-5480, 2020 WL 290425, at *13 (6th Cir. Jan. 21, 2020) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997))); *see also Baker v. Colvin*, No. 1:15-cv-00910, 2016 WL 4128435, at *13 n.11 (N.D. Ohio Aug. 3, 2016) ("[T]he Court will not address an undeveloped 'argument' mentioned in passing." (citation omitted)).  Moreover, the ALJ's rejection of this aspect of Dr. Neece's February 2018 opinion was part of the ALJ's larger discussion (and partial acceptance) of Dr. Neece's opinions, which I find is adequately explained and supported.  Finally it is, in fact, well-established that the "final responsibility of determining whether or not an impairment meets or equals a Listing is reserved to the Commissioner," thus "although a treating source may opine that a plaintiff meets a Listing, that determination is not binding on the ALJ."  *Sweet v. Comm'r of Soc. Sec.*, No. 6:15-CV-0156,

---

[4] The listing of impairments has been updated since Dr. Neece offered his opinion, but there are no material differences for purposes of this report and recommendation.

2016 WL 11478205, at *5 (N.D.N.Y. July 6, 2016) (citing 20 C.F.R. § 416.927(d)(2)). To say that checkmark boxes beside each of the paragraph C criteria do not "directly" address the criteria is to elevate form over substance, as least as presented here.

Finally, I note, as the Commissioner does, that the ALJ did not reject Dr. Neese's opinions wholesale. Dr. Neese appears to be Plaintiff's primary mental health provider; certainly, he is the only treating provider who offered an opinion as to Plaintiff's mental restrictions and his treatment records constitute the bulk of the record on Plaintiff's mental health condition. Thus, any limitations on Plaintiff's ability to perform mental functions comes from Dr. Neece (and Plaintiff's own subjective complaints, which the ALJ also partially credited). And the ALJ assigned a fairly restrictive mental RFC, which allows for significant absences, no contact with the public, only occasional contact with other workers, and only infrequent changes in the workplace (Tr. 17).

In sum, I find the ALJ identified other substantial evidence in the record that is inconsistent with Dr. Neece's opinions, such that the ALJ was not required to assign controlling weight to Dr. Neese's opinions. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) ("The ALJ reasoned that Dr. Lin's conclusions are 'not well supported by the overall evidence of record and are inconsistent with other medical evidence of record.' This is a specific reason for not affording controlling weight to Dr. Lin.'"). Moreover, the ALJ provided a sufficient analysis of the relevant factors. The ALJ addressed Plaintiff's treatment record with Dr. Neece and how it was inconsistent with Dr. Neece's opinions. *See* 20 C.F.R. 404.1527 (c)(4) ("Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); (c)(3) ("Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical

15

opinion, the more weight we will give that medical opinion."). The ALJ also clearly acknowledged Dr. Neece was a treating mental health provider, covering two more relevant factors. *See id.* § 404.1527(c)(2) (treatment relationship); (c)(5) (specialization). The ALJ's decision makes clear that he found the supportability and consistency factors outweigh the fact that Dr. Neece is a treating specialist. *See Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 535 (6th Cir. 2019) ("contradictions between the treating physician's opinion and other record evidence undermine the assumption that the treating physician's insights are superior"). Accordingly, the ALJ touched on several different relevant factors when determining what weight to assign Dr. Neece's opinions, and I find Plaintiff has failed to show any error in weighing those factors. I recommend Plaintiff's motion be denied in this regard.

### b.     DDS Nonexamining Psychological Consultants

Regarding the DDS nonexamining psychological consultants, Plaintiff simply argues it was error for the ALJ to assign great weight to their opinions in light of the fact that they "did not discuss any records after December 2015," and "did not have access to either of the opinions completed by treating psychologist, Dr. John Neece." [Doc. 18 at Page ID # 987]. Plaintiff argues the "opinion of a non-reviewing examiner [sic] who did not review the complete record cannot be used to support the decision denying benefits." [*Id.*]. I respectfully disagree.

In *Blakley v. Commissioner of Social Security*, the United States Court of Appeals for the Sixth Circuit reversed the decision of an ALJ who had adopted the findings of DDS nonexamining consultants, reasoning that the consultants had not reviewed a significant portion of the claimant's medical record. 581 F.3d 399 (6th Cir. 2009). "But *Blak[ley]* should not be misconstrued as 'providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record.'" *Walthall v. Comm'r of Soc. Sec.*, No. 17-14116,

2019 WL 1466888, at *3 (E.D. Mich. Jan. 16, 2019) (quoting *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016)), report and recommendation adopted, 2019 WL 911690 (E.D. Mich. Feb. 25, 2019). "There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Id.* at *3 (quotation marks omitted) (quoting *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011)). In every claim for DIB or SSI which results in an administrative hearing before an ALJ, "some time will elapse between the date that a medical opinion about the claimant's condition is rendered and the date that the ALJ considers that opinion. Frequently, new evidence about the claimant's condition will come to light during the intervening period of time." *Morgan v. Astrue*, No. 3:09-CV-262, 2010 WL 3723992, at *13 (E.D. Tenn. June 30, 2010), report and recommendation adopted, 2010 WL 3723985 (E.D. Tenn. Sept. 15, 2010).

"Where the non-examining source did not review a complete case record, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion from the non-examining source." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quotation marks and citations omitted). Here, the ALJ adequately summarized the entire medical record, including the records dated after the DDS consultants offered their opinions. Indeed, the ALJ included restrictions that the DDS consultants did not find necessary in February 2016, such as no interacting with the public, and only occasionally interacting with coworkers (Tr. 17, 98). *See Downing v. Berryhill*, No. CV 16-10321, 2017 WL 2214591, at *3 (E.D. Mich. Mar. 16, 2017) (ALJ's reliance on DDS nonexamining consultant's opinion was within ALJ's zone of choice, even though opinion was based on incomplete record, where ALJ added limitations based on later records). Moreover, the ALJ noted the DDS consultants' opinions were supported by "*additional* evidence showing the claimant to be on a steady, stable course," and "consistent with [Plaintiff's]

17

conservative course of treatment consistent of therapy and medication for psychiatric conditions." (Tr. 19 (emphasis added)).  This reference to "additional evidence," combined with the ALJ's reference to specific treatment dates and the description of Plaintiff's long-term mental health treatment record make clear that the ALJ was cognizant of the fact that the DDS psychological consultants did not review Plaintiff's entire medical record.  *See Koehn v. Comm'r of Soc. Sec.*, No. 2:16-cv-11755, 2017 WL 3612872, at *4 (E.D. Mich. July 18, 2017) (finding "ALJ's date references make clear that she was aware of [the] chronology" of the claimant's medical records and therefore did not err in relying on opinions of consultants who had only reviewed a portion of the record), report and recommendation adopted, 2017 WL 3602024 (E.D. Mich. Aug. 22, 2017)

Plaintiff does not assert any other errors with the ALJ's decision to assign "great weight" to the DDS psychological consultants' opinions.  Moreover, I find the ALJ's consideration of the psychological opinion evidence is supported by substantial evidence and the ALJ's explanations are sufficiently clear.  Plaintiff's motion should be denied in this regard.

## 2. The ALJ's Review of the Record and Compliance with SSR[5] 96-8p

In addition to challenging the ALJ's treatment of the medical opinion evidence pertaining to his mental health conditions, Plaintiff argues the ALJ erred in his consideration of the record evidence concerning his physical conditions.  Plaintiff contends the ALJ "selectively chose to discuss and rely on mere portions of the medical record, while ignoring substantial medical evidence which documented [his] ongoing pain and difficulties with daily activities." [Doc. 18 at Page ID # 988].  Specifically, Plaintiff contends the ALJ inappropriately focused on "two physical examinations from January 2016 and June 2016 which revealed a normal gait, normal muscle tone, mild muscle spasms, mildly reduced range of motion, and tenderness to palpation," while the ALJ

---

[5] Social Security Ruling

failed to acknowledge Plaintiff "had a plethora of medical treatment visits prior to January 2016 and between January 2016 and June 2016" [*Id.*]. Plaintiff also takes issue with a number of other specific comments or observations made by the ALJ, each of which is addressed below.

Plaintiff sustained a serious back injury after falling 12 feet while cutting a tree, requiring back surgery on July 24, 2015. As an aside, I note this appears to be the beginning of Plaintiff's more serious physical problems. After discussing the medical record concerning Plaintiff's physical conditions in detail through the surgery date, which Plaintiff does not challenge, the ALJ wrote the following:

> Over the next few months [after surgery on July 24, 2015], the claimant was using a cane for ambulation and taking pain medication as needed for pain (5F/5, 14). He participated in physical therapy through December 2015 and noted increased strength, but continued to report radicular symptoms after brief periods of exertion (12F/1-3).
>
> Physical examination in January and June 2016 revealed a normal gait and normal muscle tone, but mild muscle spasms, mildly reduced range of motion and tenderness to palpation (15F/3, 13). The claimant's intermittent pain complaints continued to be treated with as-needed pain medications (15F/14). Follow-up diagnostic imaging in June 2016 revealed postoperative and other degenerative changes, but no significant abnormalities (15F/31).
>
> From June 2016 through May 2017, the claimant continued to participate in physical therapy (16F). Nerve conduction studies performed in November 2016 found evidence for the presence of moderate asymmetric motor polyneuropathy with there being signs of demyelination as well as axonal involvement (24F/1).
>
> He underwent lumbar injections in October 2017, after experiencing significant relief from a prior medial branch block in June 2017 (17F/3, 81). Accordingly, the undersigned has limited the claimant to a reduced range of light work with additional postural limitations.

(Tr. 18-19).

I find no merit in Plaintiff's contention that the ALJ erred by not discussing more of Plaintiff's medical visits. As mentioned earlier, the ALJ is not required to discuss every piece of evidence in the record. *See Thacker*, 99 F. App'x at 665. Plaintiff specifically challenges the ALJ consideration of a June 4, 2016 MRI (Tr. 599-600). The ALJ describes the MRI as revealing "postoperative and other degenerative changes, but no significant abnormalities (15F/31)." (Tr. 18). Plaintiff lists a number of observations/findings from the MRI, seemingly suggesting they are, in fact, "significant abnormalities."

Plaintiff does not cite to any authority to support his characterization of the MRI findings over the ALJ's, or explain how these allegedly "significant abnormalities" require a different RFC. *See Koehn*, 2017 WL 3612872, at *7 ("Plaintiff's argument does not explain how the ALJ's RFC limitations fail to address the diagnostic imaging results."). I find the ALJ's characterization is supported by the "impression" and "results" sections of the MRI, completed by Paul Dennis Campbell, M.D. Dr. Campbell observed that there was a "*Known* acute L1 burst fracture with 50% loss of vertebral body height and 4 mm osseous retropulsion," as well as "*Postoperative changes* of L1 laminectomy and T12-L2 posterior fusion," and "*Degenerative changes*, otherwise most apparent at L5-S1." (Tr. 600 (emphasis added)). Dr. Campbell also specifically noted there was "no abnormal CNS enhancement," and that "Visualized visceral structures show no significant abnormalities." (Tr. 600).

Plaintiff also takes issue with the ALJ's consideration of lumbar injection procedures:

> [A]lthough the ALJ stated that [Plaintiff] had "significant relief" from lumbar injections, on June 28, 2017, [Plaintiff] presented to University of Tennessee Medical Center ("UTMC") for bilateral L1, L2, L3, L4, and L5 medial block branch blocks with fluoroscopy. UTMC noted that [Plaintiff] had tenderness over the low lumbar facet joints and pain with facet loading. UTMC further noted that the "previous medial branch blocks in the low lumbar spine

> offer[ed] some relief, but he was left with significant amount of
> pain."

[Doc. 18 at Page ID # 989 (citations to Tr. omitted) (last alteration in original)].

The June 28, 2017 record Plaintiff cites to is from the appointment for the June 2017 injection(s). The notes for that appointment state: "The patient is a 36-year old man with a history of low back pain. . . . Previous medial branch blocks in the low lumbar spine offer[ed] some relief, but he was left with significant amount of pain. We are adding 2 levels on each side today to see if this offers more benefit." (Tr. 765). It is unclear when the even earlier "previous medial branch blocks in the low lumbar spine" took place, but the record does clearly reflect that following the June 28, 2017, injection(s), Plaintiff experienced "significant relief," as the ALJ found (Tr. 687 (October 2017 records)). Accordingly, I find no error with the ALJ's consideration of this aspect of Plaintiff's medical record. The ALJ adequately considered Plaintiff's history of back injections.

Plaintiff next challenges the ALJ's discussion of notes concerning Plaintiff's daily activities recorded during Plaintiff's therapy sessions. On this issue, the ALJ wrote:

> Upon appeal, [Plaintiff] alleged progressively worsening depression and leg pains (8E; 12E). On function reports, he described back pain that prevents him from sitting or standing more than 30 minutes comfortably . . . . At the hearing, he testified to similar . . . pains.
>
> . . . .
>
> The medical record demonstrates functional abilities and behaviors that are inconsistent with the duration, frequency and severity of the alleged limitations. For instance, at an appointment in July 2016, the claimant reported he was able to perform some outdoor activities such as mowing and raking the grass despite his ongoing back pain (19F/23). Additionally, at a therapy appointment in January 2017, he reported a desire to make money by purchasing old trailer homes and "sprucing" them up, indicative of some level of physical activity (19F/15).

(Tr. 18-19).

21

Plaintiff argues that:

> [I]n citing this evidence as support, the ALJ failed to include the entirety of both statements: "he has been able to perform some more outdoor activity (e.g., mowing, raking grass) **but must limit himself due to back pain**"; ". . . thoughts about making money by purchasing old trailer homes . . . then selling for profit. He would need up front money, however, to do this. **He is also limited in the amount of physical activity he can perform.**" By failing to analyze the entirety of the statements, the ALJ misrepresented the amount of physical activity Mr. Goodson can perform, thus, resulting in an inaccurate RFC. Although the statements are indicative that Mr. Goodson can perform *some* level of physical activity, a proper evaluation of Mr. Goodson's record would show that this level of physical activity would prevent him from performing light work. By excluding the latter part of the statements, the ALJ seems to be "cherry picking" medical evidence to fit his conclusions.

[Doc. 18 at Page ID # 990 (citing Tr. 858, 850) (Plaintiff's emphases)].

Clearly, the ALJ considered Plaintiff's reports relating to yard work and sprucing up trailers as part of the ALJ's overall analysis of Plaintiff's subjective statements. To the extent Plaintiff is challenging this analysis, he faces an uphill battle. An ALJ's findings regarding a claimant's credibility "are to be accorded great weight and deference." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted); *see also Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (recognizing that the Sixth Circuit holds an ALJ's "credibility" determination regarding a claimant's subjective statements, to be "virtually unchallengeable" (quotation marks and citation omitted)). Nevertheless, the ALJ's finding must be supported by substantial evidence.

In considering Plaintiff's subjective complaints, including that he could only sit or stand for up to 30 minutes, the ALJ found the complaints were inconsistent not only with Plaintiff's reports of yard work and trailer repair, but also with other medical evidence, including the MRI, which is already addressed herein. *See* 20 C.F.R. § 404.1529 ("In determining whether you are

22

disabled, we consider all of your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). The ALJ also gave "great weight" to the opinions of the DDS nonexamining physician consultants, who found Plaintiff was capable of performing a limited range of light work. Further, it is entirely appropriate for the ALJ to rely, in part, on Plaintiff's ability to do yard work as being inconsistent with a person who claims to be unable to sit or stand for more than 30 minutes at a time. In short, maybe the evidence regarding the severity of Plaintiff's impairments (including evidence of Plaintiff's subjective complaints) can support more than one reasonable conclusion. The ALJ's determination, however, should not be second-guessed under these circumstances. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess.).

To the extent Plaintiff is simply making a "cherry-picking" argument regarding the ALJ's discussion of Plaintiff's activities, I am also not persuaded. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (holding "we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence). I find the ALJ provided a fair discussion of Plaintiff's statements; it is simply incorrect to suggest that the ALJ glossed over Plaintiff's back issues in recounting these notes about Plaintiff's daily activities in the medical record.

Finally, as part of his "cherry picking" argument, Plaintiff argues the "ALJ failed to comply with SSR 96-8p in assessing the claimant's RFC because the ALJ's RFC assessment is conclusory

and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p." [Doc. 18 at Page ID # 991].

SSR 96-8p states that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." 1996 WL 374184, at *1 (July 2, 1996). In addition, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. Case law in the Sixth Circuit provides that the ALJ is simply required to consider each function, not to discuss each function separately in the written decision. *See, e.g.*, *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) ("Although SSR 96-8p requires a 'function by function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." (collecting cases)); *see also Pendergrass v. Berryhill*, No. 1:16-cv-145, 2018 WL 1460867, at *10 (E.D. Tenn. Mar. 23, 2018); *Adams v. Comm'r of Soc. Sec.*, No. 4:13-cv-22, 2014 WL 3368692, at *11 (E.D. Tenn. July 8, 2014) ("SSR 96–8p clearly states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision.").

Plaintiff argues that it is "unclear" how the ALJ concluded Plaintiff was capable of performing a limited range of light work, because, Plaintiff contends, the ALJ "only discussed a small portion of the evidence" pertaining to Plaintiff's "back problems." [Doc. 18 at Page ID # 991]. It is unnecessary to belabor this final argument. As discussed above, I find the ALJ adequately addressed the medical evidence concerning Plaintiff's physical RFC. The ALJ

24

addressed the records concerning Plaintiff's fall and subsequent surgery, the imaging studies and lumbar injections performed in the years that followed, the opinion evidence concerning Plaintiff's physical condition, and Plaintiff's subjective complaints about his condition. The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh record evidence in assessing disability status. The ALJ did just that in weighing the record evidence to determine Plaintiff's RFC.

In sum, I find the ALJ's formulation of a fairly limited, light work RFC is supported by substantial evidence in the record, and the ALJ did not "cherry pick" the evidence in reaching this conclusion. Nor did the ALJ violate SSR 96-8p. I therefore recommend that Plaintiff's motion be denied in this regard.

## V.    CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I find the ALJ's assessment of the opinion evidence and Plaintiff's RFC generally is supported by substantial evidence in the record. Plaintiff cites notations in the record and interpretations of evidence that support his position, but he does not cite to any significant mistakes or errors in the ALJ's reasoning, and the ALJ's findings are to be afforded deference. Accordingly, I **RECOMMEND**[6] that:

1) Plaintiff's motion for summary judgment [Doc. 17] be **DENIED**;

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

2)  The Commissioner's motion for summary judgment [Doc. 21] be **GRANTED**; and

3)  The Commissioner's decision denying benefits be **AFFIRMED**.

ENTER:


            s/ *Susan K. Lee*
            SUSAN K. LEE
            UNITED STATES MAGISTRATE JUDGE